UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON LIGHT SOURCE, INC., Plaintiff, v. AXIS LIGHTING, INC., Defendant. | No. 17-cv-10996-NMG |

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO DISMISS (DKT. NO. 6)**

CABELL, U.S.M.J.

Boston Light Source ("BLS"), a representative of commercial lighting products, has brought a seven-count action against Axis Lighting ("Axis"), a manufacturer of commercial lighting products, to recover unpaid commissions BLS contends it earned through marketing, promoting and selling Axis's products. Axis moves to dismiss five of the seven counts for failure to state a claim. For the reasons discussed below, I recommend that the motion to dismiss be granted in part and denied in part.

I. BACKGROUND

A. Relevant Facts

Accepting the facts in the complaint as true, BLS is a sales representative for manufacturers of commercial lighting products, including Axis, whose products are sold across the United States.

(Compl. ¶¶ 4-5). On April 5, 2007, BLS and Axis entered into a Sales Representative Agreement (the "Agreement") pursuant to which BLS agreed to represent, promote, and market Axis products in the "Boston [a]rea, including eastern Massachusetts, Worcester County, and the state of Rhode Island." (Id. at ¶ 6). In exchange, Axis agreed to pay BLS a certain commission on the sale of any Axis products. (Id. at ¶¶ 6-7). Both parties reserved the right to terminate the Agreement with 30-days prior notice but BLS would be entitled in such a case to receive commissions owed "for a period of three months for any order or contract that has been registered with [Axis] within 30 days or there is sufficient evidence to prove that the agent has worked on the order or contract." (Dkt. No. 1-3).

After consummating the Agreement, BLS actively marketed and promoted Axis's products to help achieve brand recognition in the designated territory. BLS also increased sales of Axis products and introduced BLS customers to Axis management to further expand Axis's market share. (Compl. ¶¶ 8-10). Then, in early 2016, Axis instituted a "sales incentive program" under which it agreed to pay BLS an additional "incentive bonus" if BLS achieved certain sales benchmarks in a calendar year. (Id. at ¶ 11).

By the summer of 2016, BLS "had many orders pending, was on the brink of making a number of substantial sales, had made significant headway into finalizing the largest specification for

an order of Axis products it had ever created," and "was well on its way to earning a bonus" under the sales incentive program. (Id. at ¶ 12). On September 6, 2016, however, Axis notified BLS that it was terminating the Agreement. Axis stated that the termination was due to a "territorial reorganization" but BLS contends that Axis terminated the Agreement so that it could avoid having to pay BLS commissions and incentive bonuses that were due and/or that were likely to be due at the end of the calendar year. (Id. at ¶ 13-14).

### B. The Plaintiff's Claims and the Motion to Dismiss

The complaint advances seven counts. Count I alleges a breach of contract; Count II alleges a breach of the implied covenant of good faith and fair dealing; Count III alleges a violation of M.G.L. c. 104, §§ 7-9, which imposes on certain entities a statutory obligation to pay timely commissions and penalties for failing to do so; Count IV alleges a violation of M.G.L. c. 93A; Count V alleges unjust enrichment; Count VI alleges a claim for quantum meruit; and Count VII asserts a claim for an accounting. Axis moves to dismiss Counts II and IV-VII for failure to state a claim. (Dkt. No. 6). BLS opposes the motion. (Dkt. No. 14).

## II. LEGAL STANDARD

Under the Federal Rues of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To

survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (internal citations omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully," and is met where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 556).

When deciding a motion to dismiss under Rule 12(b)(6), the court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (*quoting Artuso v. Vertex Pharm, Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 555). Simply put, the Court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Iqbal,* 556 U.S. at 679.

## III. ANALYSIS

### A. Count II States a Valid Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Count II alleges that Axis breached an implied covenant of good faith and fair dealing. Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. *UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). "The covenant provides that neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Robert Reiser & Company v. Scriven*, 130 F. Supp. 3d 488, 495 (D. Mass. 2015) (*quoting Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471-72 (1991)). "[R]ecovery under [a breach of the implied covenant of good faith and fair dealing] requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure [an] undue economic advantage." *Christensen v. Kingston School Committee*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005).

Axis argues that Count II should be dismissed because it does nothing more than allege a breach of contract as in Count I. Axis argues that both counts are based on the premise that Axis unilaterally terminated the Agreement and thereafter failed to pay BLS the commissions and incentive bonuses BLS had earned. Axis

5

argued in addition at the hearing that Count II is based on conclusory and speculative allegations and therefore fails to meet the pleading standards under Rule 8(a) and Rule 12(b)(6). The court does not find these arguments to be persuasive.

Even acknowledging that Count II arises from the same Agreement underlying the breach of contract claim, Count II does not just allege that the defendant improperly terminated the parties' contract. Rather, it alleges that the defendant terminated the parties' contract in bad faith. More specifically, Count II alleges that Axis consciously terminated the Agreement when it did because it knew there were several large impending orders which if fulfilled would obligate Axis to pay BLS a substantial commission and bonus. Count II also incorporates BLS's allegation that Axis delayed the acceptance of orders worked on by BLS, concealed the existence of orders placed as a result of work performed by BLS, assigned credit for orders to itself or other sales agents in order to avoid paying commissions and incentive bonuses to BLS, and failed to credit BLS for certain bookings in order to understate the amount of commissions it owed. (Compl. ¶¶ 15 and 17).

Taking these allegations as true, Count II goes beyond alleging breach of contract and with ease adequately pleads that Axis acted in bad faith and breached an implied covenant of good faith and fair dealing. *See Stello v. Ark Engineering & Technical*

6

*Services, Inc.*, No. 15-10590-PBS, 2015 WL 4254080, at *2 (D. Mass. 2015) (claim that defendants "deprived [plaintiff] of money that was fairly earned and legitimately expected under the contract" stated valid claim for breach of implied covenant); *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 672 (1981) (complaint asserted valid claim for breach of implied covenant where it alleged defendant purposely failed to pay commissions that were earned prior to terminating parties' agreement but not yet due).

To be sure, Axis argues that the complaint is too conclusory and speculative because BLS fails to identify a single sale BLS actually was on the brink of closing; as Axis suggested at the hearing, this lack of specificity also gives rise to the concern that BLS may not even have a good faith basis to make let alone prove such a claim. This argument misses the point, however. BLS is not required at the motion to dismiss stage to provide all of the specific details which presumably will be explored and become known through discovery. Rather, what matters is whether the complaint is sufficient to put Axis on notice of what it is alleged to have done so that it may investigate the complaint and mount an appropriate defense. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (reversing district court's dismissal of complaint where complaint provided "defendant with fair notice of what the . . . claim is and the grounds upon which it rests").

7

Count II meets this standard and thus states a valid claim for relief.

**B. Count IV States a Valid Chapter 93A Claim**

Count IV alleges that Axis engaged in unfair and deceptive acts and practices in violation of M.G.L. c. 93A, Massachusetts' consumer protection statute. The complaint does not indicate the specific section but the court presumes that BLS proceeds under section 11. That section allows recovery of damages for "any person who engages in the conduct of any trade or commerce and who suffers any loss ... as the result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act..." M. G. L. c. 93A, § 11. "Conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice." *Anthony's Pier Four*, 411 Mass. at 474. "Such conduct must be more than a mere breach of contract, but must involve a breach with an extortionate quality that give it the rancid flavor of unfairness." *58 Swansea Mall Drive, LLC v. Gator Swansea Property, LLC*, No. 15-13538-RGS, 2017 WL 3671858, at *6 (D. Mass. 2017).

Arguably, where the court has already found that the complaint asserts a valid claim for breach of the implied covenant of good faith and fair dealing, it follows that the complaint also asserts a valid claim for unfair and deceptive conduct under Chapter 93A.

*See e.g., Trent Partners and Associates, Inc. v. Digital Equipment Corp.*, 120 F. Supp. 2d 84, 107 (D. Mass. 1999) ("Inherent in [a breach of the implied covenant claim] is an element of improper motive or a breach of fair dealing in depriving an employee of reasonably ascertainable future compensation based on his past services . . . [b]y their very terms both of these elements clearly fall into established common law concepts of unfairness"); *Tufankjian v. Rockland Trust Co.*, 57 Mass. App. Ct. 173, 179 (2003) ("The same evidence that supported the jury's findings of a breach of the covenant of good faith and fair dealing . . . also supported the [judge's] finding that [the Bank's] conduct amounted to an unfair or deceptive act"); *Anthony's Pier Four*, 411 Mass. at 476 ("The judge's extensive findings as to Anthony's violation of the implied covenant of good faith and fair dealing . . . established as a matter of both fact and law that Anthony's actions were unfair or deceptive").

Axis demurs and argues based on state court precedent that "even if Axis had acted in bad faith to deprive [BLS] of certain payments due under the agreement, that would amount to no more than a breach of contract." *See Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96, 104-105 (1977). *Fortune* does not stand for that proposition, however. The issue in *Fortune* was whether an employer who terminated an employee pursuant to an at-will employment contract could be liable for breach of contract. The

state Supreme Judicial Court held that because there is in every contract an implied covenant of good faith and fair dealing, a termination made in bad faith breaches that implied covenant and therefore can constitute a breach of contract. *Fortune,* 373 Mass. at 104-106. In affirming the jury's verdict in the plaintiff's favor, the SJC did not hold that a bad faith termination can only constitute a breach of contract; rather, it merely agreed that the defendant's actions in terminating the plaintiff in order to avoid paying him bonuses that were to come due were easily sufficient to constitute a breach of the implied covenant of good faith and, consequently, a breach of contract. *Id*.

Indeed, there seems to be little dispute that a contract terminated in bad faith may provide the basis for a valid claim under Chapter 93A. *See Massachusetts Employers Insurance Exchange v. Propac Mass, Inc.*, 420 Mass. 39, 43 (1995) ("While it is correct that a breach of contract alone does not amount to an unfair act or practice . . . conduct undertaken as a leverage to destroy the rights of another party to the agreement while the agreement is still in effect . . . has a coercive quality that, with other facts, warranted a finding of unfair acts or practices."); *Anthony's Pier Four*, 411 Mass. at 474 ("conduct in disregard for known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair or deceptive act or practice under c. 93A"); *Wang Labs, Inc. v. Business Associates*

*Incentives*, 398 Mass. 854, 857 (1986)(same); *Atkinson v. Rosenthal*, 33 Mass. App. Ct. 219, 225-26 (1992)(same).

In sum, Count IV states a valid Chapter 93A claim.

### C. Count V States a Valid Claim for Unjust Enrichment

Count V alleges unjust enrichment. A claim of unjust enrichment serves as "an equitable stopgap for occasional inadequacies in contractual remedies at law." *Watkins v. Omni Life Science*, Inc., 692 F. Supp. 2d 170, 179 (D. Mass. 2010). "Under the doctrine of unjust enrichment, a plaintiff seeks restitution of a benefit conferred on another whose retention of the benefit at plaintiff's expense would be unconscionable." *Id*. However, where the relationship of the parties is governed by a contract, "the contract provides the measure of the plaintiff's [remedy at law] and no action for unjust enrichment lies." *In Re Lupron Mktg. and Sales Practices Litigation*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003).

Axis argues that because its relationship with BLS was governed by contract, i.e., the Agreement, it means that the plaintiff has an adequate contract remedy at law and therefore should not be permitted to also assert a claim for unjust enrichment. The court agrees that BLS would be foreclosed from recovering under a theory of unjust enrichment if it were to prevail on its breach of contract claim. At the pleading stage, however, it is permissible to plead alternative and even

11

inconsistent legal theories. Accordingly, a complaint may properly assert a claim for both breach of contract and unjust enrichment, even accepting that a plaintiff can only recover under one of those theories. *Lass v. Bank of Am., N.A.*, 695 F. 3d 129, 140 (1st Cir. 2012); *see also Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F. 3d 1546, 1555 (1st Cir. 1994) (plaintiff "may be allowed to maintain alternative contentions at least until the evidence is closed"); *Davis v. Office Depot, Inc.*, No. 16-11783-IT, 2017 WL 773861, at *3 (D. Mass. 2017) (denying motion to dismiss unjust enrichment claim in complaint also alleging breach of contract); *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 294-95 (D. Mass. 2009) (same). There is no basis therefore to dismiss Count V at this juncture.

**D. Count VI's Quantum Meruit Claim Should be Dismissed**

Count VI asserts a claim for quantum meruit, but quantum meruit is a theory of recovery rather than a cause of action. *Depianti v. Jan-Pro Franchising Intern., Inc.*, 39 F. Supp. 3d 112, 141 (D. Mass. 2014) ("quantum meruit is not a cause of action . . . but rather a measure of damages based on the reasonable value of the services provided"); *Backman v. Smirnov*, 751 F. Supp. 2d 304, 314 (D. Mass. 2010) ("quantum meruit is a theory of recovery and not an independent cause of action"); *Tharpe v. Cisco Systems, Inc.*, No. 07-12279-RWZ, 2008 WL 687416, at *2 (D. Mass. 2008). As BLS conceded this point during the hearing on the motion, there is

no real dispute that Count VI fails to state a claim and therefore should be dismissed.

### E. Count VII (Accounting) Should be Dismissed

Count VII asserts a claim for an accounting, which in essence is an examination of two parties' dealings to determine who owes what to whom. It is well established that to state a cause of action for an accounting a plaintiff must first establish that the parties had a fiduciary relationship. *See Chedd-Angier Production Co., Inc. v. Omni Publications Intern, Ltd.*, 756 F. 2d 930, 937 (1st Cir. 1985). Because BLS alleges no such relationship here, it has not plead facts establishing entitlement to an accounting. Count VII therefore should be dismissed.[1]

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Defendant Axis Lighting, Inc.'s Motion to Dismiss Counts II and IV-VII of Plaintiff Boston Light Source, Inc.'s Complaint be GRANTED with respect to Count VI (quantum meruit) and Count VII (accounting), and DENIED with respect to Count II (implied covenant), Count IV (93A claim), and Count V (unjust enrichment).

---

[1] BLS urged at the hearing that an accounting should be compelled because the defendant is in possession of all of the pertinent documents and records it needs to show the details of the parties' financial relationship. Even if true, an accounting is not warranted in the absence of a fiduciary relationship. Regardless, BLS should still be able to obtain all of the information at issue through discovery.

13

The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983).

                                         /s/ Donald L. Cabell
                                         DONALD L. CABELL, U.S.M.J.

DATED: November 13, 2017